IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LARENZO BERLIN GLENN,** | ) | |
| **ID # 1732823,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:14-CV-3403-D (BH)** |
| | ) | |
| **LORIE DAVIS,**[1] **Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to *Special Order 3-251*, this case has been referred for findings, conclusions, and recommendation.  Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I.  BACKGROUND

Larenzo Berlin Glenn (Petitioner) challenges his conviction for burglary of a habitation with intent to commit sexual assault in Cause No. F10-58147.  The respondent is Lorie Davis, Director of TDCJ-CID (Respondent).

### A.    Factual Background

On August 5, 2010, in No. F10-58147, the State indicted Petitioner for burglary of a habitation with intent to commit sexual assault.  (Doc. 11-10 at 5[2].)  Petitioner pleaded not guilty and was tried before a jury in Dallas County, Texas, on August 2-3, 2011.  (Doc. 11-10 at 8, 43.)

---

[1]  Lorie Davis succeeded William Stephens as Director of the Correctional Institutions Division of the Texas Department of Criminal Justice.  Under Rule 25(d) of the Federal Rules of Civil Procedure, she "is automatically substituted as a party."

[2]  Page citations refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

The complainant testified that she was awakened by a loud noise at the front door of her apartment. (doc. 11-6 at 28-29.) She opened her bedroom door and saw Petitioner in the hallway coming to the bedroom. (*Id*. at 29.) She recognized him because he had tried to sell her soap, but she did not know his name. (*Id*. at 30.) He did not have her consent to be in her apartment. (*Id*. at 29.) He pushed her into the bedroom. (*Id*. at 31.) Her children were yelling, and he told them to shut up. (*Id*. at 32.) He went to the front door and spoke to someone outside. (*Id*. at 33.) She opened the door and yelled, but he pulled her back into the apartment and into the bedroom by her hair. (*Id*. at 33-34.) Petitioner hit her, pushed her onto the bed, and pushed her children to the side of the bed. (*Id*. at 35-36.) He pulled down her underwear and penetrated her sexual organ with his sexual organ without her consent while continuing to hit her. (*Id*. at 37.) The sexual assault lasted ten to fifteen minutes, and he ejaculated. (*Id*. at 38.) He then took a television, DVD player, and $9 and opened the door to leave the apartment. (*Id*. at 39.) The police were there. (*Id*. at 40.) She told them Petitioner had raped her, and they arrested him. (*Id*.)

Defense counsel cross-examined her about her statement to the police. (*Id*. at 48.) She testified she did not tell the police he ripped off her underwear. (*Id*.) She did not remember telling the police that he did not have an erection, and she did not remember him having a problem having an erection. (*Id*.)

Ismael Rodriguez was working near the apartment when he heard banging on the apartment door and saw a man push the door and force his way into the apartment. (*Id*. at 8-9.) The man kicked the door once and pushed it in with his body. (*Id*. at 13.) He was with another man who waited outside. (*Id*. at 12.) Rodriguez saw a woman trying to get out of the apartment and asking for help, but she was not yelling. (*Id*. at 12.) The man who entered her apartment attacked her and

2

pulled her inside.  (*Id*.)  Rodriguez asked a friend, Juan Herrera, to call the police.  (*Id*. at 12, 15.)
Herrera called the police.  (*Id*. at 20.)

When police officer Matthew Cartwright arrived, he spoke with a man standing near the
apartment, Michael Hicks, who was was extremely intoxicated.  (*Id*. at 57, 74, 80.)  Officer Ray
Rojas arrived at the scene.  (*Id*. at 74.)  Petitioner opened the apartment door, saw the police officers,
and immediately shut the door.  (*Id*. at 57, 75.)  The complainant screamed.  (*Id*. at 58, 66.)
Petitioner came out of the apartment and was taken into custody.  (*Id*. at 57, 76.)  The complainant
said he attacked her.  (*Id*.)  After reviewing the police report, Officer Rojas testified that the
complainant said he hit her in the face and ripped off her underwear.  (*Id*. at 64.)  There were fresh,
red marks on her neck.  (*Id*. at 69.)  She had redness and bruising on her chest, face, shoulders, and
back.  (*Id*. at 92.)

The apartment door frame or door jam was broken, the hinge was on the floor, and there
were shattered pieces of wood on the ground.  (*Id*. at 65, 76, 92.)  Officer Cartwright could tell that
the door had been kicked in.  (*Id*.)  Just inside the door were a television, CD player, and DVD
player.  (*Id*. at 62, 79.)  A bra strap was on the living room floor, and the complainant's underwear
was on the bedroom floor, but it was not torn.  (*Id*. at 92.)  Fingerprints on the television set matched
Petitioner's fingerprints.  (*Id*. at 101, 122, 125.)  Seminal fluid and sperm cells were detected on
vaginal swabs and leg swabs taken from the complainant.  (Doc. 11-7 at 7.)  The DNA profile from
those matched Petitioner's DNA profile.  (*Id*. at 24.)

The jury found Petitioner guilty and assessed a life sentence.  (Doc. 11-10 at 43.)

**B.**     **Post-Judgment Proceedings**

The appellate court summarized Petitioner's issues on direct appeal as follows:

In his opening brief in this appeal, appellant complained in four issues that because the jury charge "completely fail[ed] to contain an application paragraph ... or any definition of sexual assault," (1) the requirements of article 36.14 of the Texas Code of Criminal Procedure were not satisfied and (2) "[t]he evidence is insufficient when compared against the law on which the jury was charged."

Subsequent to the filing of appellant's opening brief and the clerk's record in this Court, a supplemental clerk's record was filed. The supplemental clerk's record contained a jury charge that differed from the jury charge in the clerk's record. On appellant's motion, we abated this appeal and ordered the trial court to conduct a hearing to determine "which of the jury charges filed in the appellate record constitutes the correct jury charge given in this case." After the trial court complied with that order, this appeal was reinstated and supplemental appellate briefs were filed by the parties. In two "supplemental issues," appellant asserted the trial court (1) erred by failing to correctly apply Texas Rule of Appellate Procedure 34.5(d) and (2) abused its discretion in determining that the jury was read the charge contained in the supplemental clerk's record.

We decide against appellant on his two supplemental issues. In light of our resolution of those supplemental issues, appellant's issues in his opening brief are moot. The trial court's judgment is affirmed.

*Glenn v. State*, No. 05-11-01012-CR, 2013 WL 1281912 at *1 (Tex. App.–Dallas, March 19, 2013).

He filed a petition for discretionary review (PDR) on May 3, 2013, which was refused.  *See Glenn v. State*, PD-531-13 (Tex. Crim. App. July 24, 2013).  He did not file a petition for writ of certiorari with the Supreme Court.

He mailed a state habeas application on March 3, 2014.  (Doc. 11-20 at 23.)  On July 23, 2014, the Court of Criminal Appeals denied the state habeas application on the trial court's findings.  (Doc. 11-21); *see Ex parte Glenn*, No. WR-81,645-01 (Tex. Crim. App. July 23, 2014).

**C.    Substantive Claims**

On September 16, 2014, Petitioner mailed his federal habeas petition, which was received on September 22, 2014.  (Doc. 1.)  It raised the following grounds:

(1) The indictment was defective (ground one);

4

(2) The jury charge was defective (ground one);

(3) Trial counsel was ineffective by failing to:

> -investigate inconsistencies, errors, and unfounded allegations in the discovery packet and falsified police reports;
>
> -investigate or subpoena Michael Hicks;
>
> -be present when Petitioner's DNA was taken;
>
> -object to the defective jury charge and the defective indictment;
>
> -file a motion to quash the indictment; and
>
> -file a motion to suppress (ground two);

(4) Appellate counsel was ineffective by failing to raise an issue about:

> -the defective indictment; and
>
> -ineffective assistance of trial counsel (ground three);

(5) Several witnesses committed perjury (within the argument for ground two);

(6) The evidence was insufficient to support the conviction (within the argument for ground two).

Respondent filed a response on January 21, 2015.  (Doc. 14.)  Petitioner filed a reply brief on February 27, 2015.  (Doc. 18.)

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). As for the "unreasonable application" standard, a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal

law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III. INDICTMENT

In his first ground, Petitioner contends the indictment does not set out an offense because it does not allege that the offense was done "with the intent to commit" a felony or specify the manner of entry and the elements of sexual assault. (Doc. 1 at 6, 11, 22-23, 26.)

"The sufficiency of a state indictment is not a matter for federal habeas corpus review unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (1985). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). It is beyond the scope of federal habeas review to review the correctness of the state court's interpretation of state law. *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir.1995).

Where the state court has held that an indictment is sufficient under state law, a federal court need not address the issue unless that indictment was insufficient to invoke jurisdiction. *See McKay*

*v. Collins*, 12 F.3d 66, 68–69 (5th Cir. 1994) ("sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction") (citation omitted).   Under Texas law, all that is required for jurisdiction is the presentment of the indictment to the court.   *Id.* at 69 (noting that a defect in substance in an indictment does not deprive a state trial court of jurisdiction) (citing *Moreno v. Estelle*, 717 F.2d 171 (5th Cir. 1983)). Even failure to include a necessary element of an offense in the indictment does not deprive the court of jurisdiction.  *McKay*, 12 F.3d at 69.

The test for resolving the sufficiency of an indictment "involves minimal constitutional standards, not whether a better indictment could have been written."  *McKay*, 12 F.3d at 69 (citing *United States v. Chaney*, 964 F.2d 437, 446 (5th Cir. 1992)).   To afford notice sufficient to satisfy constitutional requirements, an indictment must include "[t]he essential elements of the offense," but they need not be "expressed in any specific terms."  *Id.* (citation omitted).   Ultimately, "[a]n indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted."  *Id.* (citation omitted).

Here, the indictment alleged that Petitioner did "unlawfully, intentionally and knowingly enter a habitation without the consent of . . . the owner thereof, and did then and there commit a felony other than theft, namely, sexual assault." (Doc. 11-0 at 5.)  The state habeas court found that the indictment tracked the statutory language of Tex. Penal Code § 30.02, it provided sufficient notice of the charged offense, and it was not fundamentally defective.  (Doc. 11-20 at 115.)

Petitioner was charged with burglary of a habitation under Tex. Penal Code § 30.02(a)(3), which provides that "[a] person commits an offense if, without the effective consent of the owner, . . . the person enters a . . . habitation and commits or attempts to commit a felony . . .."  An

8

indictment for burglary under § 30.02(a)(3) is not required to allege that the entry was done with the intent to commit a felony because that is an element of burglary under § 30.02(a)(1) (entering a habitation "with intent to commit a felony, theft, or an assault"), but it is not an element of burglary under § 30.02(a)(3) (entering a habitation and committing or attempting to commit a felony). *Rivera v. State*, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991) (citing *Hammond v. State*, 664 S.W.2d 838, 840 (Tex. App.–Corpus Christi 1984). An indictment under § 30.02(a)(3) is not required to allege the elements of the felony committed after the entry. *Davila v. State*, 547 S.W.2d 606, 608 (Tex. Crim. App. 1977). " 'Enter' means to means to intrude: (1) any part of the body; or (2) any physical object connected with the body." Tex. Penal Code § 30.02(b). The alternative definitions of "enter" are evidentiary and need not be alleged in a burglary indictment. *Marrs v. State*, 647 S.W.2d 286, 289-90 (Tex. Crim. App. 1983). Petitioner has not shown the indictment was defective.

Petitioner has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

## IV. JURY CHARGE

Petitioner also contends in his first ground that the jury charge was missing pages, not numbered, incomplete, and inaccurate. He asserts it did not set out an offense for the same reasons that the indictment was defective – it did not include the phrase "with intent to commit" or specify the elements of sexual assault and the manner of entry. (Doc. 1 at 6, 11, 24-27.)

On direct appeal, Petitioner argued that the jury charge was erroneous. The original clerk's record included a jury charge, and the supplemental clerk's record included a different jury charge. The trial court held a hearing and determined that the jury charge in the supplemental clerk's record was the one that had been read to the jury. The appellate court upheld that finding. *Glenn v. State*,

2013 WL 1281912 at *1.  Petitioner appears to contend that the jury charge in the original clerk's record was the one that was read to the jury.

To warrant federal habeas relief on the basis of a violation of due process due to an error in the trial court's instructions to the jury, the court must find that the jury charge error rendered the entire trial fundamentally unfair.  *See Thompson v. Lynaugh*, 821 F.2d 1054, 1060 (5th Cir.1987) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154–55 (1977)).  The question is whether the alleged invalid instruction "by itself so infected the entire trial that the resulting conviction violated due process, not merely if the instruction was undesirable, erroneous, or universally condemned." *Wright v. Director, TDCJ*, No. 9:11–CV–204, 2012 WL 7159911, at * 20 (E.D. Tex. Oct.2, 2010) (citing *Henderson*, 431 U.S. at 155)), *rep. and rec. adopted*, 2013 WL 607850 (E.D. Tex. Feb.19, 2013).

Here, the appellate court addressed the jury charge as follows:

Appellant timely filed this appeal on August 4, 2011. On October 27, 2011, the clerk's record was filed in this Court. The clerk's record contained a document titled "Charge of the Court" that consisted of five unnumbered pages (the "first-filed charge"). On the first page of that charge, the last line read as follows, with no period or end mark: "A person commits the offense of sexual assault if, the person intentionally or knowingly." On the second page of that charge, the first line read "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result."

Appellant's opening brief in this Court, in which he complained as described above respecting the jury charge [that there was no application paragraph and there was no definition of sexual assault], was filed on January 25, 2012. On February 8, 2012, the supplemental clerk's record described above was filed. The supplemental clerk's record contained a document titled "Charge of the Court" that consisted of seven unnumbered pages (the "second-filed charge").1 Five of the seven pages of the second-filed charge were identical to the five pages of the first-filed charge. However, the second and sixth pages of the second-filed charge were not contained in the first-filed charge.

10

As in the first-filed charge, the last line on the first page of the second-filed charge read "A person commits the offense of sexual assault if, the person intentionally or knowingly," with no period or end mark. Unlike in the first-filed charge, there was an apparent continuation of that sentence on the second page of the second-filed charge. Specifically, the second page of the second-filed charge read in its entirety as follows:

> causes the penetration of the sexual organ of another person by any means, without that person's consent. Sexual assault is a felony.

> "Bodily injury" means physical pain, illness, or any impairment of physical condition.

> In this case, the indictment having charged that the burglarious entry, if any, was made and the defendant did then and there commit a felony, namely, sexual assault, before you would be warranted in finding the defendant guilty, you must be satisfied from the evidence beyond a reasonable doubt that the entry, if any, was so made and the defendant did then and there commit a felony, namely, sexual assault.

The sixth page of the second-filed charge stated in its entirety

> Now, considering all the law contained in the Court's charge, if you find beyond a reasonable doubt that the Defendant, Larenzo Berlin Glenn, on or about the 16th day of July, A.D., 2010, in Dallas County, Texas, did unlawfully, intentionally or knowingly enter a habitation without the effective consent of Ana Saldana, the owner thereof, and committed a felony other than theft, namely, sexual assault, then you will find the defendant guilty of the offense of burglary of a habitation, and say by your verdict, guilty.

> If you do not so believe, or if you have a reasonable doubt to the defendant's guilt, then you will acquit the defendant and say by your verdict, not guilty.

The State filed its appellate brief on February 17, 2012. The State contended therein that the issues in appellant's opening brief should be overruled because "the jury charge actually given, as shown in the supplemental clerk's record," contained "a proper application provision and a complete definition of sexual assault" and the evidence was "sufficient to support Appellant's conviction under the applicable law, which was correctly charged to the jury."

Appellant filed a motion to abate this appeal on April 3, 2012. He stated therein that the abatement was requested "to determine the origin of the two non-sequential

pages from the supplemental record and how the filed jury charge of August 3, 2011 was changed without explanation for the purpose of determining whether there is a record that can be certified to as accurate in this cause." Appellant asked this Court to "abate this appeal and direct the trial court to hold a hearing consistent with the foregoing." On April 16, 2012, this Court abated this appeal as described above.

Pursuant to this Court's abatement order, the trial court held a hearing on August 30, 2012. At the hearing, appellant offered copies of the two jury charges in question into evidence for record purposes. A copy of the second-filed charge was admitted into evidence as exhibit one and a copy of the first-filed charge was admitted into evidence as exhibit two. [Footnote 2 - Additionally, a supplemental reporter's record containing the second-filed jury charge was proffered by appellant and admitted into evidence as exhibit three.]

Kendra Matthews–Freeman, a deputy clerk in the Dallas County District Clerk's Office, testified that on August 3, 2011, she filed-stamped a jury charge in this case and scanned it into the "On–Base" system. She testified she did not believe at that time that she had scanned the jury charge incorrectly. She stated that on February 3, 2012, she was contacted by Joe Lockhart from the appellate section of the Dallas County district attorney's office, who told her there had to be something wrong with the jury charge in the "On–Base" system. Matthews–Freeman tried unsuccessfully to obtain a copy of the jury charge from the court reporter and the district attorney's office. Then, Matthews–Freeman contacted appellant's trial counsel, Dan Eckstein. Matthews–Freeman testified Eckstein had "a complete charge," which consisted of "loose" pages that were not stapled together. According to Matthews–Freeman, she and Eckstein "compared the pages of the charge" and "verified" that "there was two pages missing" from the charge on the "On–Base" system. Matthews–Freeman stated she obtained copies of those two "missing" pages from Eckstein. Then, she stated, "I corrected—I updated On–Base. I made the corrections." Specifically, she printed a copy of the jury charge from the "On–Base" system, then "scanned the entire charge in again" and inserted the two additional pages she had received from Eckstein.

On cross-examination, Matthews–Freeman testified as follows:

> Q. Okay. And when you had asked [Eckstein] if he had—well, when you asked him if he had a copy of the jury charge, I mean, is that how you asked it? Or did you ask simply for an original jury charge? Or did he understand—
>
> A. I explained to him the situation that was, you know, going on. I told him that, you know, I had tried to obtain copies from the court reporter and other avenues, and they informed me that the Defense attorney has a copy of the charge. And I wanted to see if he had maintained his copy of the charge in the file. And he said, yes, he keeps a copy of the—generally of his jury

charges and—you know, during trials. And he went upstairs, retrieved his file for Larenzo Glenn, and came back with his copy of the jury charge.

Q. And is there anything to lead you to believe that what he gave you was not a copy of the full, final jury charge?

A. No, like I said, he and I, as I said, we compared the pages, page per page, and he had everything that I had with the exception of those two pages.

Eckstein testified in part, "... I don't know whether my file contains a completed, final version of the charge that was read to the jury." Additionally, on cross-examination, Eckstein testified as follows:

Q. Mr. Eckstein, is it likely that you would have allowed a charge to go to the jury that didn't have an application paragraph?

....

A. No, I don't think I would have.

Q.... And is it likely that you would have let a charge go to the jury that had a sentence on page one that ends mid-sentence with no continuation?

....

A. I don't think so.

After the presentation of evidence, the trial court stated, in part, as follows:

... And the Court finds that the Court read the charge as reflected in Defendant['s] Exhibit 1 and 3.

I was the presiding judge, and realized something would have been amiss, when—when reading from page one to page two if there was a large gap in logic, or in sentence structure.... I'm not going to read just whatever's in front of me.

... And, like I say, [Eckstein's] very good, and the State's attorneys are very good, and they would have seen that the application paragraph wasn't read.

....

So, yes, I'm doing this somewhat on personal experience, but I think that also matters. So, that's why I say, do I know for certain? No. But logic and

> common sense and practice and how I do things coupled with the fact that
> neither side objected leads me to the conclusion it was read correctly as it
> appears in Defendant's Exhibit Number 3.

*Glenn*, 2013 WL 1281912 at *1-4.  The appellate court held that the trial court did not err in finding

that the jury charge in the supplemental clerk's record had been read to the jury.  *Id*. at *6.

The jury charge read to the jury included the definition of "entry" as the intrusion of any part

of the body or any physical object connected to the body.  (Doc. 11-11 at 4.)  It stated that "[a]

person commits the offense of sexual assault if the person intentionally or knowingly causes the

penetration of the sexual organ of another person by any means, without that person's consent" and

that sexual assault is a felony.  (*Id*. at 4-5.)  The jury charge did not include an element that the entry

was done "with intent to commit" sexual assault, because, as discussed, intent to commit a felony

is not an element of burglary under § 30.02(a)(3).  *Rivera v. State*, 808 S.W.2d at 92.  Petitioner has

not shown that the jury charge in the supplemental clerk's record was not the one that had been read

to the jury, and he has not shown that the jury charge was erroneous.

Petitioner has not shown that the state court's denial of relief on this claim was an

unreasonable application of federal law or an unreasonable determination of the facts.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his second ground, Petitioner claims that his trial counsel was ineffective by failing to (1)

investigate inconsistencies, errors, and unfounded allegations in the discovery packet and falsified

police reports; (2) investigate or subpoena Michael Hicks; (3) be present when Petitioner's DNA

was taken; (4) object to the defective jury charge and the defective indictment; (5) file a motion to

quash the indictment; and (6) file a motion to suppress.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, a movant must show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Movants must "affirmatively prove prejudice." *Id.* at 693. The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (citations and internal quotation marks omitted). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain federal

habeas relief.  *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.      <u>Exhaustion and Procedural Bar</u>

Respondent contends that some of Petitioner's ineffective assistance claims are unexhausted and procedurally barred.  His appellate briefs did not raise a claim of ineffective assistance of counsel.  (*See* docs. 11-1, 11-2).

A petitioner must fully exhaust state remedies before seeking federal habeas relief.  28 U.S.C. § 2254(b).  To exhaust under § 2254, a petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court. *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir.1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a petition for discretionary review (PDR) or an application for writ of habeas corpus.  *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.  A petitioner must present his claims in a procedurally correct manner as well.  *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

In those cases, the federal procedural default doctrine precludes federal habeas corpus review.  *Id.*;
*see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would
be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to
be procedurally barred).

**B.**  **Inconsistencies**

Petitioner claims that counsel failed to investigate or familiarize himself with the
inconsistencies, errors, and unfounded accusations in the discovery material.  He asserts the officers'
incident report was falsified; the door was not kicked down or off the hinges; the complainant's face
was not bruised; skin cells and blood were not recovered from his nails; hair and semen were not
recovered; and a piece of ribbon was represented to be a bra strap.  He claims physical evidence was
moved, and notes the incident report states he did not have an erection.  (Doc. 1 at 6, 12, 32.)
Respondent argues that this claim is unexhausted and procedurally barred.  (Doc. 14 at 8.)

In his state habeas corpus application, Petitioner contended that his attorney had a duty to
familiarize himself "with the material provided, and the substantial amount of inconsistencies,
errors, unfound[ed] [accusations and] allegations gave the counselor probable cause."  (Doc. 11-20
at 14.)  He did not allege any facts regarding that claim in his state habeas application.  He did not
allege any facts about the police report, the door, bruising on the complainant, skin cells, blood, hair,
semen, a ribbon, or the moving of physical evidence.  His claim is therefore exhausted only to the
extent he raises the general allegation that counsel did not investigate inconsistencies, errors, and
unfounded accusations and allegation.  His allegations are conclusory, however, and do not show
he is entitled to relief.  *United States v. Woods*, 870 F.2d at 288 n.3; *United States v. Daniels*, 12 F.
Supp. 2d at 575-76; *see also Miller v. Johnson*, 200 F.3d at 282.  Petitioner has not shown that the

state court's denial of relief on his general claim was an unreasonable application of federal law or an unreasonable determination of the facts.

Petitioner's claim is unexhausted to the extent he now alleges specific facts beyond the general allegation that counsel did not investigate inconsistencies, errors, and unfounded accusations and allegation.  It is also procedurally barred from federal habeas review.  If he brought his expanded claim in a subsequent state habeas corpus application, the Court of Criminal Appeals would consider it procedurally defaulted under Article 11.07 § 4 of the Texas Code of Criminal Procedure.

Moreover, the unexhausted portion of this claim also lacks merit.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  During cross-examination of the police officers, counsel brought out that the information in the police report about the door in came from the complainant, the apartment was older, and there was other damage to the door that was not from the incident.  (Doc. 11-6 at 63, 85.)  He brought out that there were no photographs of the damage to the door jam and suggested that the damage may have occurred before the incident.  (*Id*. at 85-87, 109, 111-13.)  Counsel also brought out that the police report stated that the complainant said she was hit in the face, but an officer could not determine whether she had injuries on her face.  (*Id*. at 64, 67.)  The detective testified on cross-examination that she did not tell him she was hit in the face and did not testify about any injury to her face, although he testified about her other injuries.  (*Id*. at 140, 142-43.)  Counsel brought out that the officers did not collect or find a bra that went with the bra strap found on the floor, that objects had been moved during the investigation, and that items were not supposed be moved during

18

that time.  (*Id*. at 71-72, 89, 107-09, 114.)[1]

In closing argument to the jury, counsel emphasized the alleged inconsistencies.  (Doc. 11-7 at 33.)  He argued that the door was already broken (*id*. at 34, 42-44); that Petitioner had no scratches and there were no cells under the complainant's fingernails (*id*. at 37-38); and that the medical report stated Petitioner did not have an erection (*id*. at 39).  He pointed out that the complainant denied saying that to the police or to medical personnel.  (*Id*.)  He argued that the complainant's version of events to Officer Rojas differed from her later versions, including differences about being hit, kicked, and thrown to the ground.  (*Id*. at 40-41.)  He theorized that Petitioner and the complainant knew each other, that Petitioner pushed open the door because he knew it was already broken, that he entered the apartment with the complainant's consent, and that they had consensual sex.  (*Id*. at 36, 45-46.)

Contrary to Petitioner's allegations, the record shows that counsel was aware of inconsistencies and pointed them out in cross-examination and in closing argument.  Petitioner has not shown counsel was ineffective for failing to investigate any inconsistencies.

## C.    DNA sample

Petitioner contends counsel was not present when police officers took swabs of his mouth for DNA testing pursuant to a court order.  (Doc. 1 at 30.)  Respondent asserts this claim is unexhausted and procedurally barred.  (Doc. 14 at 8.)

Because Petitioner's state habeas application asserted that the DNA swab was illegally obtained because his lawyer was not present, (*see* doc. 11-20 at 12), this claim is exhausted.  It lacks merit, however.  There is no constitutional right to have counsel present for the collection of a DNA

---

[1]  Contrary to Petitioner's allegations, semen was recovered from the complainant.  (*Id*. at 7.)

sample. *United States v. Lewis*, 483 F.3d 871, 874 (8th Cir. 2007); *Moss v. Johnson*, No. 2:04-CV-0142, 2004 WL 2248262 at \*2 (N.D. Tex. Oct. 6, 2004). Petitioner has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts

**D.      Indictment**

Petitioner contends counsel failed to file a motion to quash the indictment or object to the indictment, based on the alleged defects he raises in his ground regarding the indictment. (Doc. 1 at 30-31, 34.) As discussed, he has not shown the indictment was defective. Counsel was not ineffective for failing to raise a meritless argument. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). Petitioner has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

**E.      Jury instructions**

Petitioner contends counsel failed to object to the erroneous jury charge. (Doc. 1 at 30-31, 34.) As discussed, he has not shown the jury charge was erroneous. Counsel was not ineffective for failing to raise a meritless objection. *See United States v. Kimler*, 167 F.3d at 893; *Koch v. Puckett*, 907 F.2d at 527. Petitioner has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

**F.      Motion to Suppress**

Petitioner asserts counsel failed to file a motion to suppress. (Doc. 1 at 33, 34.) Respondent argues that this claim is unexhausted and procedurally barred. (Doc. 14 at 8.)

20

Petitioner did not raise this claim on appeal or in his state habeas corpus application. (*See* docs. 11-1, 11-2, 11-20.) This claim is therefore unexhausted. He would be barred from raising this claim in a successive state habeas application, so his claim is also procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

The claim also lacks merit. Petitioner alleges counsel should have filed a motion to suppress "the documented material." (Doc. 1 at 34.) It is not clear what documented material he alleges counsel should have moved to suppress, and he does not allege any basis for a motion to suppress. His conclusory claim lacks merit. *United States v. Woods*, 870 F.2d at 288 n.3; *United States v. Daniels*, 12 F. Supp. 2d at 575-76; *see also Miller v. Johnson*, 200 F.3d at 282. To the extent he asserts counsel should have moved to suppress the indictment and the jury charge, as discussed, he has not shown the indictment and jury charge were erroneous. To the extent he contends counsel should have moved to suppress the incident report, he has not shown any legal basis for its suppression. He argues the report included false information. It is the role of a jury to determine the weight and credibility to give evidence, and counsel did not render deficient performance for failing to object to the report that included allegedly false information. *Grimaldo v. United States*, 4:13-CV-347, 2016 WL 1556013 at *5 (E.D. Tex. April 18, 2016). Counsel was not ineffective for failing to file meritless motions. *See United States v. Kimler*, 167 F.3d at 893; *Koch v. Puckett*, 907 F.2d at 527.

## G.   Witness

Petitioner contends counsel failed to investigate or subpoena Michael Hicks, whom allegedly would have testified in his favor. (Doc. 1 at 12, 30.)

Complaints of uncalled witnesses are not favored in habeas corpus review because the

presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative. *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009). To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. *Day v. Quarterman*, 566 F.3d at 538; *Alexander v. McCotter*, 775 F.2d at 602.

Counsel submitted an affidavit in response to the state habeas application. (Doc. 11-20 at 118.) It stated that Hicks and Petitioner met on the day of the offense, and that Hicks was "passed out drunk" at the bottom of the stairs during the assault. Although Hicks was arrested, he was not charged because he had nothing to do with the offense, and he had no information that was relevant to the case. (*Id*. at 119.) The state habeas court found that counsel was worthy of belief, that Hicks had no relevant information, and that the failure to call Hicks as a witness was sound trial strategy. (*Id*. at 115.)

Petitioner does not allege the content of Hicks's proposed testimony, and he has not shown that the testimony would have been favorable to his defense. He has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

## VI. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his third ground, Petitioner contends appellate counsel was ineffective for failing to raise issues about (1) ineffective assistance of trial counsel and (2) the defective indictment. He asserts appellate counsel did not consult with him, and had counsel done so, counsel would have raised

those issues.  (Doc. 1 at 14.)

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*.  Under *Strickland*, the movant must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).  "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.' "  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention."  *Williamson*, 183 F.3d at 462–63 (footnote and citations omitted).  To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

A.    **Ineffective assistance of trial counsel**

Petitioner contends appellate counsel failed to raise an issue about the ineffective assistance of trial counsel.  (Doc. 1 at 14, 35-36.)  Respondent argues that this claim is unexhausted and procedurally barred.  (Doc. 14 at 8.)

Petitioner's state habeas application asserted that appellate counsel was ineffective for failing to raise trial counsel's failure to move to quash the indictment.  (Doc. 11-20 at 37.)  His federal

23

claim is exhausted to the extent it is based on this specific alleged failure.  As discussed, Petitioner has not shown trial counsel was ineffective for failing to challenge the indictment because he has not shown that it was defective.  He has not shown appellate counsel was ineffective for failure to raise that claim.  *See United States v. Kimler*, 167 F.3d at 893 (counsel is not ineffective for failing to raise a meritless argument); *United States v. Phillips*, 210 F.3d at 348 (counsel is not ineffective for failing to raise a meritless claim on appeal).  Petitioner has not shown that the state court's denial of relief on the exhausted aspect of this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

To the extent his federal claim of ineffective assistance of appellate counsel relies on other instances of alleged deficient performance by trial counsel, it is unexhausted because he did not raise it in state court.  (*See* docs. 11-1, 11-2, 11-20.)  He would be barred from raising this claim in a successive state habeas application, so this claim is also procedurally barred from federal habeas review.  *See Nobles*, 127 F.3d at 423.

Additionally, it lacks merit.  He does not specify the deficient performance of trial counsel that should have been the basis of an appellate ground, so his claim is conclusory.  *United States v. Woods*, 870 F.2d at 288 n.3; *United States v. Daniels*, 12 F. Supp. 2d at 575-76; *see also Miller v. Johnson*, 200 F.3d at 282.  He has also not shown trial counsel was ineffective, so he has not shown appellate counsel was ineffective for failing to raise this claim.  *See United States v. Kimler*, 167 F.3d at 893; *United States v. Phillips*, 210 F.3d at 348

## B.     <u>Indictment</u>

Petitioner contends appellate counsel failed to raise an issue about the defective indictment.  (Doc 1 at 14, 35-36.)  As discussed, he has not shown the indictment was defective.  He has not

shown appellate counsel was ineffective for failing to raise an issue about the indictment. *See United States v. Kimler*, 167 F.3d at 893; *United States v. Phillips*, 210 F.3d at 348. Petitioner has not shown that the state court's denial of relief on this claim was an unreasonable application of federal law or an unreasonable determination of the facts.

## VII.  PERJURY

In ground two, Petitioner asserts that police officers committed perjury. (Doc. 1 at 12, 32.) Respondent argues that this claim is unexhausted and procedurally barred. (Doc. 14 at 8.)

Petitioner did not raise this on appeal or in state habeas, so this claim is unexhausted. (*See* docs. 11-1, 11-2, 11-20.) He would be barred from raising this claim in a successive state habeas application, so this claim is procedurally barred from federal habeas review. *See Nobles v. Johnson*, 127 F.3d at 423.

Moreover, this claim lacks merit. The Supreme Court has held that the presentation of false evidence at trial, as well as the admission into evidence at trial of unsolicited false evidence that is not corrected, violates a criminal defendant's due process rights if the reliability of a given witness may be determinative of guilt or innocence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). In order to prevail on a claim that his constitutional rights were violated by the presentation of false testimony, a petitioner must establish that: (1) the testimony was actually false; (2) the prosecution knew it was false; and (3) that it was material. *Napue*, 360 U.S. at 271. Knowledge of falsity is attributed to the prosecutor as the spokesperson for the government. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Supreme Court has also stated that a new trial is dictated only when the false testimony could, in any reasonable likelihood, have affected the judgment of the jury. *Napue*, 360 U.S. at 271.

Petitioner has failed to point out specific testimony that was false, and he has not shown that the prosecutor knew such testimony was false. Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between a witness's testimony and prior statements or testimony of other witnesses do not establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Martinez-Mercado*, 888 F.2d 1484, 1492 (5th Cir. 1989). Conflicting testimony is to be resolved by the jury. *See Koch*, 907 F.2d at 531. Petitioner has not shown he is entitled to relief on this claim.

## VIII.  SUFFICIENCY OF EVIDENCE

Although not explicitly raised as an independent claim, Petitioner argues in relation to his other claims that the evidence was insufficient to support his conviction. (*See* doc. 1 at 12, 18, 32-33) (allegations of "unfounde[ed] accusations," visit was to "reacquaint and use the phone on a consensual level" and "violence . . . was not the purpose," "wrongfully convicted," "officers turned this simple consensual visit into a fabricated violent crime," "no concrete evidence to support the officer's incident report," "the crime was fabricated," and the State submitted "a falsified report with no evidence.")

Under Texas law, it has long been held that challenges to the sufficiency of the evidence of a conviction must be raised on direct appeal. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims not cognizable in post-conviction, collateral attack); *West v. Johnson*, 92 F.3d 1385, 1389 n. 18 (5th Cir. 1996) (recognizing that this is a long-standing legal principle under Texas law). The Texas Court of Criminal Appeals denied without written order Petitioner's state application for writ of habeas corpus, which contended the evidence was insufficient. That decision was an adjudication on the merits. *See Singleton v.*

*Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). When the Court of Criminal Appeals denies a state application for writ of habeas corpus without written order, it implicitly denies sufficiency claims on the procedural basis that such claims are not cognizable on state habeas review. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). When the last state court to review a claim clearly and expressly states that its judgment rests on a procedural bar, the procedural default doctrine generally bars federal review. *See Harris v. Reed*, 489 U.S. 255, 262 (1989); *Lowe v. Scott*, 48 F.3d 873, 875 (5th Cir. 1995).

Petitioner has procedurally defaulted any claim of insufficiency of the evidence under Texas law. This default constitutes an adequate and independent state procedural ground to bar federal habeas review of the claim. *See Reed v. Thaler*, 428 F. App'x 453, 454 (5th Cir. 2011) (citing *Busby v. Dretke*, 359 F.3d 708, 724 (5th Cir. 2004), and *Ex parte Grigsby*, 137 S.W.3d at 674). The claim is therefore procedurally barred unless Petitioner shows cause and prejudice or a fundamental miscarriage of justice. *See Smith v. Johnson*, 216 F.3d 521, 524 (5th Cir. 2000). He has not shown cause and prejudice, and he has not shown a fundamental miscarriage of justice or actual innocence.

Petitioner has also not shown that his claim has merit. Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id*. Under *Jackson*,

"the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos–Garcia*, 184 F.3d 463, 465 (5th Cir.1999).

Here, the State presented evidence that Petitioner entered the complainant's apartment without her consent and intentionally or knowingly caused the penetration of her sexual organ without her consent. There was sufficient evidence to support the conviction for burglary of a habitation by entering a habitation without the owner's consent and by committing sexual assault.

## IX.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The petition for habeas corpus relief under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SO ORDERED** this 11th day of October, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE